UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIDGETTE L. ALBAUGH,

          **Plaintiff,**         **CIVIL ACTION NO. 14-cv-10963**

  **v.**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

         **Defendant.**

_____/


## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [14] AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [18]

Plaintiff Bridgette L. Albaugh seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 14) and Defendant's Motion for Summary Judgment (docket no. 18). Plaintiff also filed a response to Defendant's motion. (Docket no. 19.) With consent of the Parties, this case has been referred to the undersigned for final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Docket no. 16.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and is now ready to rule.

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed an application for supplemental security income on September 21, 2007, alleging disability beginning December 31, 2004, due to carpal tunnel syndrome, herniated

discs, arthritis, "repitory," depression, anxiety, possible Crohn's disease, severe migraines, allergies, and lung problems. (TR 377-79, 394.) The Social Security Administration denied Plaintiff's claims on March 18, 2008, and Plaintiff requested a *de novo* hearing. (TR 154, 178.) The hearing was initially scheduled for February 10, 2010, but it was subsequently postponed due to inclement weather, rescheduled due to Plaintiff's failure to appear, and continued so that Plaintiff could seek representation. (TR 158.) Finally, on August 3, 2010, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Elliott Bunce. (TR 158, 165.) It was then discovered that a recording of the hearing was not made. (TR 158.) The hearing was rescheduled for September 15, 2010; Plaintiff did not appear, but the ALJ took testimony from the vocational expert. (TR 158.) In a September 22, 2010 decision, ALJ Bunce found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 158-65.) The Appeals Council reviewed and vacated ALJ Bunce's hearing decision and remanded Plaintiff's case to an ALJ for further resolution. (TR 169-73.)

On remand, Plaintiff appeared with a representative and testified at a hearing before ALJ Kathleen H. Eiler on October 20, 2011. (TR 65-113.) At the hearing, Plaintiff amended her alleged onset date to October 16, 2007. (TR 389.) In an January 20, 2012 decision, ALJ Eiler found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 39-59.) The Appeals Council declined to review the ALJ's decision (TR 1-6), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court.


II.     HEARING TESTIMONY AND MEDICAL EVIDENCE

2

A.      **Plaintiff's Testimony**

Plaintiff was 45 years old at the time of the administrative hearing and 41 years old on the

application date.  (TR 57, 69.)  Plaintiff briefly summarized her hearing testimony:

> Ms. Albaugh continues to live at home with her boyfriend who helps her with things
> like grocery shopping since her daughter had moved out of the home (Tr.89). She
> testified at the hearing that she did not complete high school and that the highest
> level of education she completed was 10th grade (Tr. 69). Ms Albaugh does not have
> a driver's license, and testified to such at her hearing (Tr. 90). She testified to having
> previously worked as a cashier, sales attendant, and bartender/shortorder cook (Tr.
> 99-101). The claimant also stated that just prior to her hearing with ALJ Eiler [s]he
> had spent approximately four days in bed (Tr. 89), and that "sometimes I go four,
> five days, six days, not even taking a shower--" (Tr. 96). She also indicated that she
> does not enjoy any hobbies (Tr. 90), and said "I live in sweatpants and pajama
> bottoms" (Tr. 96).

(Docket no. 14 at 9.)  The undersigned has reviewed the hearing transcript and will cite to it as

necessary throughout this Report and Recommendation.

B.      **Vocational Expert's Testimony**

First, the vocational expert (VE) classified Plaintiff's past work as a general cashier as

unskilled at the light exertional level, as a sales attendant as unskilled at the light exertional level,

as a bartender as semi-skilled at the light exertional level, and as a short-order cook as semi-skilled

at the light exertional level per the Dictionary of Occupational Titles (DOT) but unskilled as

performed by Plaintiff.  (TR 99-101.)

The VE testified that a hypothetical individual of the same age, education, and work

experience as Plaintiff who could perform work at the sedentary exertional level; could frequently,

as opposed to constantly, reach, handle, finger, or feel with the right upper extremity; could never

climb ladders, ropes, or scaffolds; could occasionally climb ramps or stairs, balance, stoop, crouch,

kneel, or crawl; should avoid concentrated exposure to humidity, wetness, temperature extremes,

and pulmonary irritants, such as smoke, dust, and fumes; should avoid all exposure to workplace

hazards such as moving machinery and unprotected heights; could perform simple, routine, repetitive tasks in a low-stress environment, meaning no more than occasional changes in a routine work setting and no high production-rate pace; could occasionally interact with supervisors and co-workers, and should never interact with the general public could not perform any of Plaintiff's past work. (TR 101-02.)

The VE testified, however, that such an individual would be able to perform unskilled work at the sedentary level, such as a production worker/assembler, for which there were 2,400 jobs available regionally and 28,000 jobs available nationally; a machine operator/tender without exposure to hazards or moving parts, for which there were 1,300 jobs available regionally and 44,000 jobs available nationally; and an inspector, for which there were about 700 jobs available in the region and 13,000 jobs available in the nation. (TR 102-03.) The VE also testified that all occupations would be eliminated if the hypothetical individual was expected to be off task at least 15 percent of each workday. (TR 103.)

Plaintiff's counsel then asked the VE if the individual's ability to perform the aforementioned jobs would be affected if the individual was further limited to only occasional reaching, handling, fingering, and feeling with the right upper extremity. (TR 108.) The VE responded that the individual would work more slowly, but not too slowly to perform the aforementioned jobs. (TR 109.) The VE testified that an additional limitation of no production-type work would preclude the aforementioned jobs. (TR 109-10.) Finally, the VE testified that, for an unskilled employer, it is commonly acceptable to have no more than six unexcused absences in any six-month period. (TR 110-11.)

### C.    Medical Evidence

The Court has thoroughly reviewed Plaintiff's medical record. In lieu of summarizing

4

Plaintiff's medical history, the Court will make references and citations to the record as necessary in response to the parties' arguments.

## III.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of September 21, 2007, and that Plaintiff suffered from the following severe impairments: degenerative disc disease, osteoarthritis, chronic obstructive pulmonary disease (COPD), migraines, fibromyalgia, Crohn's disease, carpal tunnel syndrome, depression, anxiety, and a personality disorder. (TR 41-42.) The ALJ also found, however, that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 42-46.) The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she can frequently, as opposed to constantly, reach, handle, finger, and feel with her right upper extremity. She can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, or crawl. She should avoid concentrated exposure to humidity, wetness, temperature extremes, and pulmonary irritants, such as smoke, dusts, and fumes. She should avoid all exposure to workplace hazards, such as moving machinery and unprotected heights. She can perform simple, routine repetitive tasks in a low stress environment, meaning no more than occasional changes in a routine work setting and no high production rate pace work. She can occasionally interact with supervisors and coworkers, but should never interact with the general public.

(TR 47-57.) Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 58-59.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time since September 21, 2007, the date the application was filed. (TR 59.)

## IV.   LAW AND ANALYSIS

### A.   Standard of Review

5

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.   Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)   Plaintiff was not presently engaged in substantial gainful employment; and

6

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.     Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of

7

the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration."  *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and remanded for an award of benefits under sentence four because (1) the RFC assessment and the hypothetical questions presented to the VE do not accurately portray Plaintiff's impairments and (2) the ALJ's rationale for discounting the opinion of Dr. Mark Zaroff, Ph.D., L.P., lacks articulation.  (Docket no. 14 at 12-19.)

### 1.    The ALJ's Mental RFC Determination

Plaintiff asserts that the ALJ's RFC assessment and the hypothetical questions posed to the VE do not accurately portray her mental impairments.  To support her argument, Plaintiff relies on the Medical Source Statement of Ability to do Work-Related Activities (Mental) completed by Dr. Zaroff in conjunction with a psychological consultative evaluation on August 2, 2011.  (TR 677-78.) As Plaintiff points out, Dr. Zaroff found Plaintiff markedly limited in her ability to: (1) carry out detailed instructions; (2) make judgments on simple work-related decisions; (3) interact appropriately with the public; (4) interact appropriately with supervisor(s); (5) interact appropriately with co-workers; (6) respond appropriately to work pressures in a usual work setting; and (7) respond appropriately to changes in a routine work setting.  (TR 677-78.)  Plaintiff acknowledges that "marked" is defined on the medical source statement as a serious limitation where the ability to function is severely limited but not precluded.  (Docket no. 14 at 13 (citing TR 677).)  Plaintiff then claims, however, that five of the seven marked limitations assessed by Dr. Zaroff are work preclusive and should have been included in the RFC.  (Docket no. 14 at 13, 15.)  These limitations are:

      (1) the ability to make judgments on simple work-related decisions;
      (2) the ability to interact appropriately with supervisor(s);
      (3) the ability to interact appropriately with co-workers;
      (4) the ability to respond appropriately to work pressures in a usual work setting; and
      (5) the ability to respond appropriately to changes in a routine work setting.

(*Id.*)  The ALJ assessed Plaintiff's mental residual functional capacity as follows:

> She can perform simple, routine repetitive tasks in a low stress environment, meaning no more than occasional changes in a routine work setting and no high production rate pace work.  She can occasionally interact with supervisors and coworkers, but should never interact with the general public.

(TR 47.)  According to Plaintiff, the ALJ's mental RFC assessment does not accurately portray the marked limitations listed above as determined by Dr. Zaroff.  Plaintiff does not suggest what additional work restrictions are necessary to accurately portray those marked limitations; she only suggests that the addition of those limitations to her RFC would preclude work.

     The ALJ is only required to incorporate in a claimant's RFC (and the hypothetical questions to the VE) those limitations that the ALJ finds credible and supported by the record.  *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).  Here, after providing a thorough summary of Dr. Zaroff's evaluation, including his opinion regarding Plaintiff's marked limitations, the ALJ accorded "some weight to the assessment of Dr. Zaroff to the extent that it was consistent with the assessed residual functional capacity" but found that "the record, as described above, does not support the extent of the assessed limitations in interactions with others and ability to handle work pressures."  (TR 53, 55.)  Essentially, the ALJ included in Plaintiff's RFC those limitations that she found to be supported by the record.  Thus, in substance, Plaintiff's assertion that the RFC is inaccurate is merely a collateral attack on the ALJ's determination with regard to Dr. Zaroff's opinion, which will be addressed below.

        2.     *The ALJ's Rationale for Discounting Dr. Zaroff's Opinion*

As discussed above, Dr. Zaroff conducted a psychological consultative evaluation of Plaintiff on August 2, 2011, with regard to Plaintiff's alleged disability. (TR 670-79.) The parties do not dispute that Dr. Zaroff was not a treating physician, as he only saw Plaintiff once before he opined her limitations. The ALJ is not bound by a non-treating physician's opinion. *McKivens v. Comm'r*, No. 11-cv-14268, 2012 WL 3263847, at *11 (E.D. Mich. Jul. 9, 2012) (citation omitted). However, "[w]hen no treating physician opinion has been granted controlling weight ... the medical opinion of a consultative examiner is to be weighed considering all of the factors identified in 20 C.F.R. § 404.1527(c)(1) through (6)." *Id.* (citing 20 C.F.R. § 404.1527(e)(2)(iii)). Nevertheless, there is no per se rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. § 404.1527(c). *Norris v. Comm'r*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)).

The ALJ thoroughly discussed Dr. Zaroff's evaluation findings and determined:

> The undersigned accords some weight to the assessment of Dr. Zaroff to the extent that it is consistent with the assessed residual functional capacity; however, the record, as described above, does not support the extent of the assessed limitations in interactions with others and ability to handle work pressures. Additionally, little weight is assigned to the claimant's GAF score, as it is not consistent with the medical evidence of record or the claimant's reported activities of daily living.

(TR 55-56.)

Here, the ALJ discussed only one of the factors listed under § 404.1527(c) in according Dr. Zaroff's opinion regarding Plaintiff's limitations some weight: consistency with the record as a whole. Plaintiff asserts that the ALJ's rationale in discounting Dr. Zaroff's opinion is vague and lacks articulation. (Docket no. 14 at 16-17.) Specifically, Plaintiff asserts that the ALJ does not identify which portion of the record she is referring to in determining that "the record, as described above," does not support the extent of the limitations assessed by Dr. Zaroff. (*Id.*) Defendant

10

counters that "[i]t's rather clear that the portion of 'the record described above' that conflicted with Dr. Zaroff's interpersonal interaction finding was the ALJ's social functioning determination" in step three of the sequential evaluation process. (Docket no. 18 at 14.) The Court disagrees with Defendant.

"An ALJ ... must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Meyer v. Comm'r of Soc. Sec.*, No. 10-cv-12963, 2011 WL 3440152, at *9 (E.D. Mich. Jun. 9, 2011) (quoting *Lowery v. Comm'r of Soc. Sec.*, 55 F. Appx. 333, 339 (6th Cir. 2003)). The *Meyer* court further found that it "may not uphold an ALJ's decision, even if there is enough evidence in the record to support it, if the decision fails to provide an accurate and logical bridge between the evidence and the result." *Id.* (citations and internal quotation marks omitted).

In this case, the ALJ's assessment of Dr. Zaroff's opinion falls on page 17 of her 21-page decision. (TR 39-59.) Prior to assessing Dr. Zaroff's opinion in her decision, the ALJ discussed whether Plaintiff's impairments met the severity of a listed impairment and set forth an extensive summary of the record evidence. Particularly, the ALJ recited Plaintiff's testimony, Plaintiff's objective medical evidence and medical opinion evidence, and Plaintiff's daily activities at length. As Plaintiff points out, it is not clear which part of the record, as described in the preceding 17 pages of her decision, the ALJ finds to be inconsistent with Dr. Zaroff's assessment of marked limitations in Plaintiff's abilities to interact with others and handle work pressures. Although the ALJ recited the relevant evidence of record prior to addressing Dr. Zaroff's opinion, she did not cite to or analyze one iota of evidence in connection with her conclusion that Dr. Zaroff's opinion was inconsistent with the record. It is not within the purview of the Court to sift through the record and cite to evidence that may support the ALJ's findings. The ALJ's generalized conclusion that Dr.

11

Zaroff's opinion is inconsistent with the record evidence, without further discussion of the regulatory factors or the particular evidence with which the opinion is inconsistent, is inadequate, even in light of Dr. Zaroff's status as a non-treating medical source.  Remand on this basis is warranted.

Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [14] is **GRANTED IN PART** and **DENIED IN PART** and Defendant's Motion for Summary Judgment [18] is **DENIED**.  On remand, the ALJ will address and provide further support for her decision to discount the August 2011 opinion of Dr. Zaroff.

Dated: March 11, 2015          s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Order was served upon Counsel of Record on this date.

Dated: March 11, 2015          s/ Lisa C. Bartlett
                               Case Manager

12